UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TERESA A. AVILEZ,                  ) Case No. EDCV 14-0732-JPR
                                   )
                 Plaintiff,        )
                                   )
          vs.                      ) **MEMORANDUM OPINION AND ORDER**
                                   ) **AFFIRMING COMMISSIONER**
CAROLYN W. COLVIN,                 )
Acting Commissioner of            )
Social Security,                   )
                                   )
                 Defendant.        )
                                   )

**I.   PROCEEDINGS**

        Plaintiff seeks review of the Commissioner's final decision
denying her applications for Social Security disability insurance
benefits ("DIB") and supplemental security income benefits
("SSI").  This matter is before the Court on the parties' Joint
Stipulation, filed January 9, 2015, which the Court has taken
under submission without oral argument.  For the reasons stated
below, the Commissioner's decision is affirmed.

**II.  BACKGROUND**

        Plaintiff was born on December 11, 1961.  (Administrative
Record ("AR") 24, 215.)  She completed eighth grade (AR 24, 245)
and worked as a stock clerk, child monitor, and customer-service

1

1   agent (AR 96, 246).  On April 6, 2011, Plaintiff filed

2   applications for DIB and SSI, alleging that she had been unable

3   to work since July 31, 2009, because of a herniated disc.  (AR

4   215-26, 245.)  After Plaintiff's applications were denied

5   initially and on reconsideration, she requested a hearing before

6   an Administrative Law Judge.  (AR 199-201.)

7        A hearing was held on October 24, 2012, at which Plaintiff

8   appeared and was represented by counsel.  (See AR 63.)  Plaintiff

9   testified, as did both a medical expert and a vocational expert.

10  (See AR 64.)  In a written decision issued November 14, 2012, the

11  ALJ determined that Plaintiff was not disabled.  (AR 13-26.)

12       On January 11, 2013, Plaintiff requested review by the

13  Appeals Council.  (AR 7-8; see also AR 279-82 (letter brief).)

14  On February 21, 2014, the Appeals Council denied Plaintiff's

15  request for review.  (AR 1-3.)  This action followed.

16  **III. STANDARD OF REVIEW**

17       Under 42 U.S.C. § 405(g), a district court may review the

18  Commissioner's decision to deny benefits.  The ALJ's findings and

19  decision should be upheld if they are free of legal error and

20  supported by substantial evidence based on the record as a whole.

21  See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra

22  v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial

23  evidence means such evidence as a reasonable person might accept

24  as adequate to support a conclusion.  Richardson, 402 U.S. at

25  401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

26  It is more than a scintilla but less than a preponderance.

27  Lingenfelter, 504 F.3d at 1035.  To determine whether substantial

28  evidence supports a finding, the reviewing court "must review the

                                    2

1  administrative record as a whole, weighing both the evidence that
2  supports and the evidence that detracts from the Commissioner's
3  conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.
4  1996).  "If the evidence can reasonably support either affirming
5  or reversing," the reviewing court "may not substitute its
6  judgment" for that of the Commissioner.  Id. at 720-21.

7  **IV.  THE EVALUATION OF DISABILITY**

8      People are "disabled" for purposes of receiving Social
9  Security benefits if they are unable to engage in any substantial
10 gainful activity owing to a physical or mental impairment that is
11 expected to result in death or has lasted, or is expected to
12 last, for a continuous period of at least 12 months.
13 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257
14 (9th Cir. 1992).

15     A.   The Five-Step Evaluation Process

16     The ALJ follows a five-step sequential evaluation process in
17 assessing whether a claimant is disabled.  20 C.F.R.
18 §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821,
19 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first
20 step, the Commissioner must determine whether the claimant is
21 currently engaged in substantial gainful activity; if so, the
22 claimant is not disabled and the claim must be denied.
23 §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

24     If the claimant is not engaged in substantial gainful
25 activity, the second step requires the Commissioner to determine
26 whether the claimant has a "severe" impairment or combination of
27 impairments significantly limiting her ability to do basic work
28 activities; if not, a finding of not disabled is made and the

3

1  claim must be denied.   §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

2        If the claimant has a "severe" impairment or combination of
3  impairments, the third step requires the Commissioner to
4  determine whether the impairment or combination of impairments
5  meets or equals an impairment in the Listing of Impairments
6  ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix
7  1; if so, disability is conclusively presumed and benefits are
8  awarded.   §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

9        If the claimant's impairment or combination of impairments
10 does not meet or equal an impairment in the Listing, the fourth
11 step requires the Commissioner to determine whether the claimant
12 has sufficient residual functional capacity ("RFC")[1] to perform
13 her past work; if so, the claimant is not disabled and the claim
14 must be denied.   §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   The
15 claimant has the burden of proving she is unable to perform past
16 relevant work.   Drouin, 966 F.2d at 1257.   If the claimant meets
17 that burden, a prima facie case of disability is established.
18 Id.

19       If that happens or if the claimant has no past relevant
20 work, the Commissioner then bears the burden of establishing that
21 the claimant is not disabled because she can perform other
22 substantial gainful work available in the national economy.
23 §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   That determination
24 comprises the fifth and final step in the sequential analysis.
25 §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966

26

27       [1]   RFC is what a claimant can do despite existing exertional
   and nonexertional limitations.   §§ 404.1545, 416.945; see Cooper v.
28 Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

1  F.2d at 1257.

2       B.   The ALJ's Application of the Five-Step Process

3       At step one, the ALJ found that Plaintiff had not engaged in

4  any substantial gainful activity since July 20, 2009, her alleged

5  onset date.  (AR 15.)  At step two, she found that Plaintiff had

6  the severe impairments of "lumbo sacral degenerative disc

7  disease, osteitis condensans ilii bilateral, [and] left shoulder

8  tendonitis and impingement."[2]  (AR 16)  At step three, the ALJ

9  determined that Plaintiff's impairments did not meet or equal any

10 of the impairments in the Listing.  (Id.)  At step four, she

11 found that Plaintiff had the RFC to perform light work with

12 additional limitations:

13      [S]he can lift and/or carry 10 pounds frequently and 20

14      pounds occasionally; she can stand and/or walk two hours

15      out of an eight-hour workday and sit six hours out of an

16      eight-hour workday with the ability to stand and stretch

17      every hour, estimated to take one to three minutes per

18      hour; she can occasionally bend, kneel, stoop, crouch,

19      and crawl; she can occasionally climb stairs, but she

20      cannot climb ladders, work at heights, or balance; and

21      she can occasionally work above shoulder level on the

22      left side with no limitations on the right.

23 (Id.)  Based on the VE's testimony, the ALJ concluded that

24

25         [2]  Osteitis condensans ilii is increased density in the
26 iliac  bone  of  the  pelvis.    See  Osteitis  condensans  ilii,
   http://riversideonline.com/health_reference/questions-answers/
27 an00316.cfm (last updated May 15, 2006).  The condition generally
28 causes no signs or symptoms but can cause low-back pain.  Id.; (see
   also AR 78).

                                5

Plaintiff was unable to perform her past relevant work. (AR 24.)
The ALJ found, however, that Plaintiff could perform jobs that
existed in significant numbers in the national economy. (AR 25.)
Accordingly, she found Plaintiff not disabled. (AR 26.)

**V.    DISCUSSION**

Plaintiff claims that the ALJ erred in (1) finding her
capable of light work despite her stand/walk limitation and
stretching requirement and (2) finding her capable of the jobs
identified by the VE despite her left-shoulder limitation. (See
J. Stip. at 4.) Because the ALJ's determinations were supported
by substantial evidence, remand is not warranted.

A.    The ALJ Did Not Err in Finding Plaintiff Capable of
Light Work

Plaintiff contends that the ALJ erred in finding her capable
of light work given that Plaintiff's RFC limited her to only two
hours of standing or walking in an eight-hour workday and
required that she be permitted to stand and stretch hourly. (J.
Stip. at 5-9, 13-15.)

1.    Applicable law

A district court must uphold an ALJ's RFC assessment when
the ALJ has applied the proper legal standard and substantial
evidence in the record as a whole supports the decision. Bayliss
v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ must
consider all the medical evidence in the record and "explain in
[her] decision the weight given to . . . [the] opinions from
treating sources, nontreating sources, and other nonexamining
sources." §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii); see also
§§ 404.1545(a)(1) ("We will assess your residual functional

6

capacity based on all the relevant evidence in your case record."), 416.945(a)(1) (same); SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (RFC is assessed "based on all of the relevant evidence in the case record").  In making an RFC determination, the ALJ may consider those limitations for which there is support in the record and need not consider properly rejected evidence or subjective complaints.  See Bayliss, 427 F.3d at 1217 (upholding ALJ's RFC determination because "the ALJ took into account those limitations for which there was record support that did not depend on [claimant's] subjective complaints"); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ not required to incorporate into RFC any findings from treating-physician opinions that were "permissibly discounted").  The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted).

2.   Analysis

Plaintiff contends that in finding her capable of light work, the ALJ failed to give adequate reasons for discounting the opinions of the state-agency doctors, who found Plaintiff capable of sedentary work.[3]  (J. Stip. at 7; see AR 112, 157, 376.)

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those

---

[3]    Plaintiff does not challenge the ALJ's assessment of the other medical opinions of record.

7

who did neither.  <u>Lester</u>, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than that of an examining psysician, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician.  <u>Id.</u>  Generally, the weight given a physician's opinion is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, amount of evidence supporting the opinion, consistency with the record as a whole, the doctor's area of specialization, and other factors. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

On July 28, 2011, state-agency physician J. Hartman opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, walk or stand for four hours and sit for six hours in an eight-hour workday, and do postural and agility activities only occasionally.  (AR 376.)  The same day, Dr. Hartman's opinion was incorporated into a Disability Determination Explanation (<u>see</u> AR 106-07), in which state-agency physician Leonard Naiman opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand or walk for four hours and sit for six hours in an eight-hour day; perform limited pushing and pulling activities with her lower extremities; occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; and have limited exposure to hazards (AR 108-10).  On December 7, 2011, state-agency physician N.J. Rubaum affirmed this RFC determination upon reconsideration.  (AR 153-55.)  Drs. Naiman and Rubaum indicated that Plaintiff could perform sedentary work, based on the

1  Medical-Vocational Guidelines (the "Grids").  (AR 112, 157);

2  see 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.21.  The Case

3  Analysis prepared by Dr. Hartman and a state-agency employee

4  identified as TAWOOD includes the latter's notation that "[b]ased

5  on longitudinal evidence and [consultative examination],

6  [claimant] can still do a [sedentary] job with limitations." (AR

7  376.)  The Commissioner argues that this statement should not be

8  attributed to Dr. Hartman (J. Stip. at 9-10), but he signed the

9  form without any contrary indication, suggesting agreement.

10  Thus, all three state-agency doctors recognized Plaintiff's

11  ability to perform sedentary work.

12      As an initial matter, the RFC determined by the ALJ was

13  largely consistent with those provided by the state-agency

14  doctors.  (See AR 22-23 (giving Dr. Hartman's opinion

15  "substantial weight").)[4]  To the extent the ALJ's RFC

16  determination diverged from those of the state-agency doctors, it

17  did so in Plaintiff's favor, adopting more severe restrictions:

18  only two hours of standing or walking in an eight-hour day

19

20      [4]   The ALJ did not indicate the weight afforded the
    disability determinations provided by Drs. Naiman and Rubaum.  See
21  §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii) (unless controlling weight
    is given to opinion of treating source, ALJ will explain weight
22  given opinions of state-agency doctors).  Because these state-
    agency physicians found essentially the same limitations as
23  Dr. Hartman, based in large part upon his findings (see AR 106-07,
    110, 152), any error in failing to specify the weight afforded
24  their opinions was harmless.  See Carmickle v. Comm'r Soc. Sec.
    Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (holding that ALJ's
25  error is harmless as long as substantial evidence supports ultimate
26  conclusion); cf. Rogal v. Colvin, 590 F. App'x 667, 670-71 (9th
    Cir. 2014) (finding failure to specify weight afforded doctor's
27  opinion harmless when "significant weight" was given to opinion of
28  second doctor who relied on first doctor's opinion).

9

instead of four; an hourly stretching requirement; no balancing;
and only occasional work above shoulder level on the left side.
(Compare AR 16 with AR 108-09, 154.)  Moreover, to the extent
comparison is possible, the RFC formulated by the ALJ is at least
as restrictive as the RFCs recommended by other doctors whose
opinions are reflected in the record.  (See AR 77 (on Oct. 24,
2012, medical expert Dr. Samuel Landau opining that Plaintiff
should be limited to two hours standing and walking and be
permitted to stretch for one to three minutes each hour; should
lift no more than 20 pounds occasionally and 10 pounds
frequently; should stoop and bend only occasionally; should avoid
ladders, heights, and balancing; and should only occasionally
work above shoulder level on the left side), 519-20 (on July 8,
2011, treating orthopedist Kambiz Hannani opining that Plaintiff
should lift only 20 pounds occasionally and 10 pounds frequently
and be precluded from frequent bending).)[5]

Plaintiff contends, however, that the ALJ erred in failing
to restrict her to sedentary work, as indicated by the state-
agency doctors, or provide a reason for not doing so.  (J. Stip.
at 7; AR 112, 157.)  As an initial matter, the ALJ's finding that
Plaintiff could perform a limited range of light work was

_____

[5]    Because treating neurologist Jose Rodriguez couched his
opinion that Plaintiff could not work (at least, absent "severe
restrictions") in terms of her employment in a warehouse, where she
did "a lot of lifting" (AR 290, 293, 298), his opinion gives no
indication whether he considered Plaintiff capable of a restricted
range of light work.  Similarly, on February 8, 2011, examining
orthopedist Ralph Steiger found Plaintiff temporarily totally
disabled, indicating that she was unable to return to her existing
employment, but his opinions do not indicate whether he considered
her capable of less taxing work.  (AR 569; see also AR 553.)

10

supported by the opinion of consulting examiner orthopedist

Robert MacArthur, who found the same thing (AR 373) and whose

opinion the ALJ gave "significant weight" (AR 22).  Further, the

state-agency doctors' indications that Plaintiff was restricted

to sedentary work was not a medical finding but merely reflected

the doctors' application of the Grids to Plaintiff's physical

limitations.  The ALJ was permitted to and did consult a VE to

determine what light-work jobs available in significant numbers

in the economy would accommodate Plaintiff's additional

limitations.  See SSR 83-12, 1983 WL 31253, at *2 (Jan. 1, 1983)

(noting that when individual's exertional RFC does not coincide

with any of defined ranges of work but instead includes

"considerably greater restriction(s)," VE testimony can clarify

extent of erosion of occupational base); Moore v. Apfel, 216 F.3d

864, 870 (9th Cir. 2000) ("SSR 83-12 directs that when a claimant

falls between two grids, consultation with a VE is

appropriate."); Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir.

2002) (same).

   The ALJ presented a hypothetical to the VE that encompassed

all of Plaintiff's physical limitations — which Plaintiff does

not challenge — including her ability to stand and/or walk for no

more than two hours in an eight-hour workday, her requirement of

hourly stretching, and her limitation to only occasional above-

shoulder work with her left arm.  (AR 96.)  The ALJ advised the

VE to "[p]lease testify according to the Dictionary of

Occupational Titles or explain why you are not testifying

according to the Dictionary of Occupational Titles and state what

your testimony is based upon."  (AR 95.)  The VE testified that a

11

1 person with Plaintiff's limitations could perform the jobs of
2 cashier II and information clerk. (AR 97.) The VE also eroded
3 the number of jobs available regionally and in the national
4 economy by 50 percent to reflect Plaintiff's limitations. (Id.)[6]

5       Because the hypothetical presented to the VE included all of
6 Plaintiff's limitations that were supported by the record, a fact
7 Plaintiff does not challenge, the ALJ was entitled to rely on the
8 VE's testimony. See Thomas, 278 F.3d at 956 (finding VE
9 testimony reliable when hypothetical posed included all of
10 claimant's functional limitations); see also Bayliss, 427 F.3d at
11 1218 ("A VE's recognized expertise provides the necessary
12 foundation for his or her testimony."). Moreover, the VE
13 provided a "significant reduction" in the job numbers to account
14 for Plaintiff's limitations and the extent to which the VE's
15 findings deviated from the DOT. (See J. Stip. at 8 (Plaintiff
16 asserting VE's testimony deviated from DOT), 9 (Plaintiff arguing
17 that limitations would require "significant reduction" in job
18 numbers)); Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)
19 (noting that "an ALJ may rely on expert testimony which
20 contradicts the DOT" as long as "the record contains persuasive
21 evidence to support the deviation"); Hawley v. Colvin, No. EDCV
22 13-00769 AN, 2014 WL 1276194, at *3 (C.D. Cal. Mar. 27, 2014)
23 (finding that VE's express recognition of erosion of available
24 jobs provided sufficient rationale to support deviation from

25

26
_____

27     [6]   The VE's erosion of the available jobs left 4,300
cashier-II jobs regionally and 37,750 nationally and 2,350
28 information-clerk jobs regionally and 31,350 nationally. (AR 97.)

1  DOT); <u>Palacios v. Astrue</u>, No. EDCV 10-1743 AJW, 2012 WL 601874,

2  at *11 (C.D. Cal. Feb. 23, 2012) (same).

3      Plaintiff contends that because the ALJ found her capable of

4  standing or walking only two hours in an eight-hour day, and

5  because light work in most cases requires approximately six hours

6  of standing or walking, the ALJ's finding that she was capable of

7  light work "violates agency policy." (J. Stip. at 6-7

8  (citing SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) (noting

9  that "the full range of light work requires standing or walking,

10 off and on, for a total of approximately 6 hours of an 8-hour

11 workday")).)  But the Social Security "regulations, themselves,

12 provide that the DOT classifications are rebuttable" and

13 "recognize vocational experts and several published sources other

14 than the DOT as authoritative." <u>Johnson</u>, 60 F.3d at 1435-36

15 (citing § 404.1566(d)(2)-(5), (e)).  Although most light work

16 requires more standing and walking than the ALJ found Plaintiff

17 able to perform, some light-work positions require no more than

18 two hours of standing and walking.  <u>See Ortiz v. Colvin</u>, No. ED

19 CV 14-61-AS, 2014 WL 7149544, at *4 (C.D. Cal. Dec. 15, 2014);

20 <u>Taylor v. Astrue</u>, No. CV 10-03328-JEM, 2011 WL 976777, at *4-5

21 (C.D. Cal. Mar. 18, 2011); <u>see also</u> <u>Rosales v. Colvin</u>, No. SACV

22 12-753-AGR, 2013 WL 6152861, at *13 (C.D. Cal. Nov. 22, 2013)

23 (rejecting argument that sit/stand option precludes finding of

24 light work).[7]  Plaintiff does not dispute that the VE identified

25

26      [7]   <u>Pierce v. Astrue</u>, 382 F. App'x 618 (9th Cir. 2010), upon
   which Plaintiff relies (J. Stip. at 9), is inapposite.  Unlike the
27 ALJ in this case, the ALJ in <u>Pierce</u> improperly rejected a doctor's
   finding that the claimant was capable of only two hours of standing
28 or walking.  382 F. App'x at 619-20.  The court did not consider

jobs that would accommodate her stand/walk restriction.  (J. Stip. at 5 (noting that VE "identified positions that would be performed in a seated position").)

Remand is not warranted on this basis.

B.   <u>The ALJ Did Not Err in Finding that Plaintiff Could Perform Jobs Requiring Frequent Reaching</u>

Plaintiff further contends that because her RFC provided that she could perform only "occasional[] work above shoulder level on the left side," the positions identified by the VE, which require "frequent reaching," were inconsistent with the demands of her RFC.[8]  (J. Stip. at 16; <u>see</u> AR 16, 25, 96); DOT 211.462-010 (cashier II), <u>available at</u> 1991 WL 671840; DOT 237.367-018 (information clerk), <u>available at</u> 1991 WL 672187. Plaintiff asserts that because reaching is defined in the DOT as "extending the hands and arms in any direction," SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985), it necessarily includes reaching above shoulder level.

As an initial matter, the RFC determined by the ALJ did not restrict Plaintiff's "reaching" but rather limited her to only "occasional[] work above shoulder level on the left side."[9]  (AR 16; <u>see</u> AR 96.)  "Work" and "reaching" are not necessarily the same thing.  Viewed in the context of the evidence as a whole,

───────────────

whether such a limitation would permit light work.

[8]    As defined by the Social Security Administration, occasional means "occurring from very little up to one-third of the time."  SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983).  Frequent means from one-third to two-thirds of the time.  <u>Id.</u> at *6.

[9]    Plaintiff does not challenge the ALJ's RFC finding with respect to her shoulder.

14

1   see Ryan, 528 F.3d at 1198, the ALJ most reasonably intended to
2   preclude Plaintiff from doing jobs that regularly required
3   lifting items or performing maneuvers on a sustained basis above
4   her left shoulder, not from ever reaching in an upward direction
5   with her left arm (see AR 92-93 (Plaintiff testifying that for
6   "four and a half/five months" of every six, her left-shoulder
7   pain was alleviated by "shots"); AR 75, 77 (at hearing, Dr.
8   Landau noting evidence of left-shoulder tendonitis impingement
9   and recommending only occasional above-shoulder "work" on that
10  side); AR 371-73 (on July 12, 2011, Dr. MacArthur noting
11  "moderate impingement" but no resulting limitation); AR 390, 398
12  (on July 8, 2011, Dr. Hannani noting left-shoulder impingement
13  but only slight limitation in range of motion and recommending no
14  limitation on above-shoulder work); AR 565, 569 (on Feb. 8, 2011,
15  Dr. Ralph Steiger finding reduced range of motion but no
16  impingement and diagnosing tendinitis and possible rotator-cuff
17  tear); AR 472 (on Jan. 20, 2007, imaging of left shoulder showed
18  "small amount of soft tissue calcification . . . consistent with
19  tendinitis" but "[n]o additional abnormality")).

20      Moreover, although the DOT is silent on just how much of the
21  "reaching" required by the cashier-II and information-clerk jobs
22  would require the use of both arms above shoulder level,
23  presumably it is some smaller subset of "frequent."  Indeed, of
24  the tasks indicated in each position's DOT description, it's not
25  evident that either involves above-shoulder reaching.  See DOT
26  211.462-010 (describing cashier II's tasks as receiving,
27  calculating, and recording cash payments; making change, cashing
28  checks, and issuing receipts or tickets; preparing reports of

transactions; possibly operating ticket-dispensing machine or
cash register with peripheral electronic data-processing
equipment; selling sundries; and pressing numeric keys of
computer corresponding to gasoline pump), <u>available at</u> 1991 WL
671840; DOT 237.367-018 (describing information clerk's tasks as
providing train- or bus-travel information, including timetables
and travel literature, and computing trip rates and discounts),
<u>available at</u> 1991 WL 672187.  These descriptions are not,
therefore, inconsistent on their face with the ALJ's RFC finding.
<u>Cf.</u> <u>Huerta v. Astrue</u>, No. EDCV 11-1868-MLG, 2012 WL 2865898, at
*2 (C.D. Cal. July 12, 2012) (absent indication that tasks
identified in DOT could not be performed sitting down or while
maintaining comfortable head position, DOT description was not
inconsistent with RFC, which permitted "some mobility" and
required only that claimant be able to switch neck positions
every 15 to 30 minutes).

     As noted above, the ALJ presented a hypothetical to the VE
that included all of Plaintiff's physical limitations, including
her limitation to only occasional above-shoulder work with her
left arm.  (AR 96.)  She specifically instructed the VE to
indicate if any of his testimony deviated from the DOT.  (AR 95.)
The VE testified that a person with Plaintiff's limitations could
perform the jobs of cashier II and information clerk.  (AR 97.)
And although Plaintiff's counsel questioned the VE and challenged
his finding that Plaintiff could perform those positions, counsel
did not raise the issue of Plaintiff's left-shoulder limitation.
(<u>See</u> AR 98-101); <u>cf.</u> <u>Solorzano v. Astrue</u>, No. ED CV 11-369-PJW,
2012 WL 84527, at *6 (C.D. Cal. Jan. 20, 2012) (noting counsel's

duty to raise conflict with DOT at hearing).  The ALJ was therefore entitled to rely on the VE's informed, specific, and uncontradicted explanation.  See Bayliss, 427 F.3d at 1218.

Remand is not warranted on this basis.

**VI.  CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[10] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: April 30, 2015

JEAN ROSENBLUTH
U.S. Magistrate Judge

[10]    This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

17